LANDRY, Judge.
Conceding liability, defendants appeal complaining only of the alleged excessiveness of an award of $20,000.00 to plaintiff as general damages for neck and low back injuries sustained in a rear end automobile collision. Plaintiff has answered the appeal seeking an increase in the damages awarded. We affirm.
Subject accident occurred October 24, 1974. Defendant, Hebert, driving a Ford automobile belonging to his employer, Low Lands Construction Company, and insured by United States Fidelity and Guaranty Company, ran into the rear of plaintiff’s vehicle which had slowed down because of traffic conditions ahead. Neither vehicle was seriously damaged. Both automobiles were driven from the accident scene by their respective drivers.
Plaintiff was 42 years of age at the time of the accident. He was, and still is, part owner and manager of a cigarette sales and distribution business. As manager, plaintiff supervised a staff of about two or three employees whom plaintiff assisted by stamping cigarettes, moving and loading cases of cigarettes and rendering other similar assistance when and if necessary. Plaintiff also acted as part time salesman in which capacity he regularly ran a route each Monday, Wednesday and Thursday. As salesman, plaintiff spent about one hour on the road on Monday and approximately two to four hours each Wednesday and Thursday.
The accident occurred shortly after plaintiff began one of his Thursday rounds. Immediately following the accident, plaintiff complained only of a sore nose and slight back pain. He left the scene in his car, finished his day’s work and on returning home that evening he experienced stiffness in his neck and low back. Nevertheless, plaintiff continued work as usual until 11 days later when, on November 4, 1974, he consulted his family physician, Dr. Clark Collins, General Practitioner.
Dr. Collins noted plaintiff’s complaints of neck pains. He found cervical muscle spasm and prescribed a muscle relaxant and pain reliever. Plaintiff made no complaint of back pain, so far as Dr. Collins’ records show. On November 12, 1974, plaintiff returned to Dr. Collins with essentially the same complaint. X-rays taken on this occasion proved negative. Dr. Collins saw plaintiff again on November 26, December 10, and December 24, 1974, on which latter occasion plaintiff complained of ringing in the ears. On January 21, 1974, plaintiff returned to Dr. Collins complaining of pain in the low back (the sacroiliac area) and also pain in the neck. Because of the back pain, Dr. Collins referred plaintiff to an orthopaedic surgeon. On February 25, 1975, plaintiff again consulted Dr. Collins and reported that plaintiff was taking therapy recommended by the orthopaedist whom Collins recommended. On this same occasion Dr. Collins noted that plaintiff was wearing a back brace or some sort of corset. Plaintiff again consulted Dr. Collins on April 1, 1975, complaining of back pain two or three days prior to this visit when the weather turned cold but plaintiff had no complaint of pain on the day of this visit. On November 18, 1975, Dr. Collins saw plaintiff for the last time concerning plaintiff’s back problem. On this occasion plaintiff complained of back pain during cold weather. Dr. Collins prescribed Tylenol for pain. Plaintiff was never hospitalized or placed in traction. Dr. Collins was of the view that any residual effects of plaintiff’s injuries could best be evaluated by an or-thopaedist.
Dr. Pete H. Rhymes, Orthopaedic Surgeon, saw plaintiff on January 21, 1975, pursuant to referral by Dr. Collins. Plaintiff complained of neck and back pain since the date of the accident. Based on x-rays taken and furnished by Dr. Collins, Dr. Rhymes found questionable spondylolisthe-sis at L-5, the lowest movable back vertebra, and minor degenerative arthritis at L-3 and L-4. Standard testing disclosed that plaintiff had normal range of motion of the back, hips and legs. Dr. Rhymes diagnosed plaintiff’s condition as lumbo-sacral strain. He prescribed a series of *1180 exercises and recommended that plaintiff lose weight. Plaintiff was advised to wear a supportive corset but was given no medication by Dr. Rhymes, who felt plaintiff should be fully recovered in two or three weeks. Dr. Rhymes again saw plaintiff on February 18, 1975, on which date plaintiff was discharged but told to return if the pain persisted. Dr. Rhymes has not seen plaintiff since. Dr. Rhymes felt that plaintiff had no residual disability as of the date of plaintiff’s last visit. He was also of the view that plaintiff’s spondylolisthesis antedated the accident. He explained that the condition was developmental, meaning it existed from early youth. He also noted that the condition is a defect in bone structure which results in a forward displacement of one vertebra over another, which places a strain upon back muscles which maintain the body erect. Dr. Rhymes acknowledged that this condition can be and usually is aggravated by trauma although it can also become symptomatic from simple ordinary movement. He also acknowledged that when this condition is aggravated by trauma, the patient may have chronic discomfort related to the aggravation or activation. In his deposition taken April 8, 1976, Dr. Rhymes conceded that if plaintiff continued to have back pain since the date of plaintiff’s last visit, he would have to assume that plaintiff’s condition was permanent.
Plaintiff testified he had no back problem prior to the accident. Since the accident he has had pain which, though not continuous, is brought about and aggravated by weather changes and the performance of such routine activity as sitting for a prolonged period, or driving his automobile for an hour or more. He also feels pain upon lifting or exertion. He is still taking medication for pain and continues to wear the corset prescribed by Dr. Rhymes, but concedes he does not wear the corset constantly. He stated he is unable to do many things he could do without difficulty prior to the accident.
Dr. George G. Brown, Jr., Orthopaedic Surgeon, saw plaintiff on February 12, 1976, for evaluation, pursuant to referral by plaintiff’s attorney. He confirmed the diagnosis of developmental spondylolisthesis at L-5. He found that plaintiff had full range of back motion but that plaintiff showed evidence of pain and tenderness in the affected area. Plaintiff made no complaint of neck pain. Plaintiff related that plaintiff’s back pain has persisted and recurs intermittently when plaintiff drives, sits or stands for any appreciable period of time. Dr. Brown also saw plaintiff on March 12, and April 23, 1976, and on each occasion found plaintiff about the same. He stated that plaintiff had a bad back from early youth which condition had been rendered symptomatic by the accident. He acknowledged that plaintiff is physically capable of doing anything plaintiff could do before the accident, but should not because, if plaintiff does, plaintiff will have problems. Dr. Brown explained that plaintiff can experience pain from merely sitting or engaging in any routine activity for an extended period of time. He estimated plaintiff’s percentage of disability at roughly 30%, one half of which is due to the spondylolisthesis and the remaining half or about 15% is due to the spondylolisthesis having been made symptomatic by the accident. He recommended that plaintiff continue to wear the back brace indefinitely.
Appellate review of an award for general damages, especially for personal injuries, is limited to determining whether the trial court or jury abused its discretion, and the adequacy or inadequacy of such an award is determined on the basis of the facts peculiar to each case. Such an award is not to be disturbed on appeal save in a case of clear and manifest error. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964).
In assessing damages for personal injuries, awards in other cases do not provide a scale of uniformity; their use is restricted to determining whether the award under consideration is greatly dispro *1181 portionate to other awards for truly similar injuries. Ballard, above; Anderson, above.
In this instance, we find that plaintiff sustained cervical and lumbosacral strain as a result of the accident. The cervical problem cleared up within a few weeks. The evidence is clear, however, that plaintiff’s pre-accident spondylolisthesis was rendered symptomatic. As a result of this latter condition, plaintiff has suffered persistent, recurring back pain brought about by what may be deemed routine activity. Dr. Brown’s testimony is explicit in that, because of plaintiff’s condition, plaintiff should not do many things plaintiff is physically capable of doing. Plaintiff is suffering from a 15% disability of the back attributable to the injuries received, which condition is most likely to continue indefinitely, if not permanently. The testimony of Drs. Rhymes and Brown is that plaintiff does not presently and may never require surgery. They agree that surgery is a faint possibility but if it is required, plaintiff would be incapacitated for approximately one year. We note also that as of trial date, approximately two years following the accident, plaintiff was still taking medication for pain and wearing a supportive corset.
The judgment of the trial court is affirmed at appellants’ cost.
Affirmed.